ELISHA W. CANNON *et al.*

*vs.*

CURTIS A. CONNAWAY and GEORGE W. WILLEN.

Sussex, Sept. T. 1884.

*Cosureties; right to share in indemnity.*

1. If one cosurety take indemnity from the principal, it will inure to the benefit of all the sureties, and equity will enforce their right to share equally therein.

2. It is immaterial that such indemnity was taken before the execution of the instrument of suretyship, if it was taken without the knowledge or consent of the other sureties.

BILL BY SURETIES TO SHARE IN INDEMNITY TAKEN BY THEIR COSURETIES.—Joseph A. Kollock, late of Dagsboro' Hundred, in Sussex County, died intestate, leaving to survive him, as his heirs at law and legal distributees of his personal estate, seven children, to wit: Robert H. Kollock; Annie Frame, wife of Henry C. Frame ; Elizabeth B. Kollock ; William S. Kollock; Mary C. Carey, wife of John F. Carey ; Joseph A. Kollock ; and Henry G. M. Kollock.

Letters of administration were in due form of law granted to the said Robert H. Kollock on the estate of said deceased, who, on the 9th day of September, 1872, gave bond as required by law, in the penal sum of $30,000, for the faithful perform-ance of his duties as administrator ; and George W. Willen, Elisha W. Cannon, Tilghman S. Johnson, George P. Morris, Daniel Burton, John T. Long and Curtis A. Connaway became his sureties on said bond. Robert H. Kollock entered upon his duties as such administrator, and in the performance of the same, on the 11th day of September, 1873, filed in the office of the register of wills of said county his first adminis-tration account on the estate of said deceased, wherein and whereby there appeared to be in his hands as such administra-tor an unappropriated balance of $5,295.02. On the first day of December, 1874, the said administrator passed a second ac-count, on the estate of said deceased, before the register of wills, whereby there appeared to be an unappropriated balance in his hands of $2,268.57. On the 18th day of September, 1874, the said Robert H. Kollock filed his petition before the reg-ister of wills, praying to be discharged from his office of ad-ministrator on the estate of the said Joseph Kollock, deceased ; and on the said last-mentioned day the said register removed the said Robert Kollock from his office of administrator.

On the 4th day of January, 1875, letters of administration *de bonis non* on the estate of the said Joseph Kollock, deceased, were in due form of law granted unto the said Curtis A.

Connaway by the said register, and thereupon the said Connaway made, executed and delivered his bond as required by law for the faithful performance of his duties as said administrator *de bonis non*, in the penal sum of $10,000, with the said John T. Long, Elisha W. Cannon and a certain William S. Phillips as his sureties therein.

Robert H. Kollock, while he was administrator as aforesaid, wasted, converted and disposed to his own use a large amount of the assets belonging to the estate of the deceased, and refused to distribute and pay over the same to the said heirs at law of Joseph Kollock and legal distributees of the estate of said deceased; whereupon the said sureties of the said Robert H. Kollock became bound in law to pay the same. The sum in which the said Robert H. Kollock, as administrator as aforesaid, made default, was $2,562.63.

Robert H. Kollock, on the day on which the said letters of administration were granted to him, made, executed and delivered to Curtis A. Connaway, either immediately before or after Connaway became his surety as such administrator,— but whether before or after does not clearly appear,—his judgment bond in the penal sum of $15,000, conditioned to indemnify and save harmless the said Connaway from all loss or damage for or on account of his suretyship for the said Robert H. Kollock, as administrator as aforesaid. On the 6th day of January, 1875, Robert H. Kollock made, executed and delivered to George W. Willen his judgment bond in the penal sum of $3,000, conditioned to indemnify and save harmless him, the said Willen, from all loss or damage for or on account of his suretyship for the said Robert H. Kollock, as administrator as aforesaid. On the 11th day of January, 1875, Robert H. Kollock made, executed and delivered to Elisha W. Cannon, Tilghman S. Johnson, George P. Morris, Daniel Burton, John T. Long and Curtis A. Connaway his judgment bond in the penal sum of $3,000, conditioned to indemnify and save harmless the obligees therein from all loss or damage for or on account of the said suretyships for the said Robert H. Kollock, as administrator as aforesaid.

Under proceedings of attachment on judgment entered upon this last-mentioned bond, Curtis A. Connaway was summoned to answer as garnishee of said Robert H. Kollock. On the 11th of April, 1877, he answered, as such garnishee, that he had in hand the sum of $337.88, subject to attachment of George W. Willen.

The bill states that, after the attachment of George W. Willen was satisfied, there remained the sum of $13.63, which was paid towards the joint indebtedness of said sureties.

It appears that both Connaway and Willen were fully paid their respective shares of the loss which they had suffered by reason of their respective suretyships for Kollock, as administrator as aforesaid, out of said Kollock's private property; but the other sureties have not received anything out of said private property, as an indemnity to them, except their proportionate shares of the said small sum of $13.63.

The bill charges that the said indemnifying bonds were given by the said Robert H. Kollock to the said Curtis A. Connaway and the said George W. Willen for their sole and separate indemnification, which was a fraud upon the cosureties of the said Curtis A. Connaway and George W. Willen, and the said bonds in equity and good conscience should be held to have been given for the use and benefit of all the sureties of the said Robert Kollock, as administrator as aforesaid; but that Connaway and Willen, although requested by the complainants to pay over and apply the said several sums collected by them, under and by virtue of the said indemnifying bonds, for the use and benefit of the complainants as well as themselves, have refused to do so.

The material special prayers of the bill are as follows:

" 2. That the said two several indemnification bonds made, executed and delivered by the said Robert H. Kollock to the said defendants may be held and decreed to have been made, executed and delivered for the use and benefit of all the sureties of said Robert H. Kollock; and that all sums collected' by the said defendants, under and by virtue of said bonds, may be held and decreed to have been collected by them for the benefit of all the said sureties.

" 3. That the defendants, Curtis A. Connaway and George W. Willen, may be decreed to pay the balance of said sum of $2,562.63, still remaining due and unpaid, to the parties properly entitled to receive the same.

" 4. That the defendants, Curtis A. Connaway and George W. Willen, may be decreed to account to the complainants for all sums collected by them respectively under and by virtue of said bonds; that an account may be taken of all sums paid by the several sureties as aforesaid of said Robert H. Kollock, administrator of Joseph Kollock, deceased; and that the said defendants, respectively, may be decreed to pay to their respective cosureties, severally, any amounts or sums their cosureties may have severally and respectively paid over and above their several and respective equal shares and proportions of said aggregate sum of $2,562.63, after deducting from said last-mentioned sum the sums collected by the defendants under and by virtue of said indemnifying bonds, and by the said Curtis A. Connaway, as assignee of said Robert H. Kollock of said judgment against Nathaniel Phillips, and the said sum of $13.63."

Connaway and Willen, the defendants, have put in separate answers to the bill of complaint, in which most of the material facts of the bill are admitted; but their liability respectively to the complainants, as cosureties, is by their respective answers denied for reasons assigned in their answers, and mainly because, they say in substance, that, the said Robert H. Kollock having become insolvent and unable to pay the distributees of the personal estate of Joseph Kollock their parts or shares of the amount for which he had defaulted, a full settlement was made by and between the heirs at law of Joseph Kollock—who were represented by Alfred P. Robinson, Esq.—and the said sureties, on or about the first day of November, 1875, at which time it was ascertained that the *devastavit* of said administrator on said estate was the sum of $2,562.63; and that all the sureties on said administration bond did on the said last-mentioned day voluntarily make, execute and deliver their joint and several judg-

ment notes for the several and respective amounts due to the several and respective heirs mentioned in paragraph six of the bill of complaint; and that on the first day of November, 1875, when said settlement as aforesaid was made, it was known to all their cosureties that they had received, respectively, the bonds of indemnity mentioned in their answers respectively, and which were the same as mentioned in the bill.- They claim to have paid the amount received by them respectively under their respective bonds of indemnity, to Mr. Robinson, who was attorney for all the heirs, except one, of Joseph Kollock, who, it appears, had been paid, on the day of the alleged settlement, his share of the *devastavit.*

There is no discrepancy between the bill and the answers, as to the amount of the *devastavit* of Robert Kollock or as to the parties to whom the joint and several notes were given, for the payment of the amount of the *devastavit,* or to whom said notes were payable, or the day on which said notes were executed and delivered.

*Caleb S. Layton* for the complainants.

*Charles M. Cullen* and *Jacob Moore* for the defendants.

THE CHANCELLOR.—The above statement of facts, although long and minute, seems to be necessary to a proper determination of the questions in controversy between the parties to this suit.

Are Connaway and Willen, as cosureties with the plaintiffs of Robert H. Kollock, administrator of Joseph A. Kollock, deceased, who made default as such administrator in the sum $2,500, bound to account for the amounts they respectively received under the several bonds of indemnity executed in their favor by the said Robert H. Kollock, and the judgments recovered and the executions thereon issued; and are they bound to contribute an equal amount, respectively, with the other respective sureties, after the application of the money so received by them under their several indemnities, to the payment of the balance of the said sum of $2,500?

The money so received by them under their several indemnities was not their individual money, but was money received by them arising from the sale of the real estate of Robert H. Kollock. If they have paid only the amount so received towards the reimbursement of the amount of the defalcation of Robert H. Kollock, as administrator of his father's personal estate, they have contributed nothing of their own individual funds towards the satisfaction of the joint and several bonds executed by all the sureties to the legal distributees of the personal estate of the deceased, and it is not alleged or proved in this case that either of the defendants has paid, in satisfaction of said defalcation, any greater sum than he received under his indemnity. Their cosureties, it is proved, have paid each an equal share of the said sum of $2,500, and the interest thereon, without any deduction of the amount received by the defendants under their indemnity,—not having shared in the benefits of said indemnities. The whole amount of the defalcation has been paid.

Shall the defendants be decreed to pay to their cosureties a sum of money sufficient to make all the sureties in the administration bond of Robert H. Kollock equal as to the amount of their respective payments, out of their own individual moneys, of the defalcation so as aforesaid by the said Robert H. Kollock?

This depends upon well established principles of equity. Equality is equity.

A surety cannot, at the time he signs an obligation with his cosureties, take an indemnity from the principal which shall, inure for his sole benefit.

If an indemnity be so taken, it shall inure to the benefit of all the sureties; and if that benefit be denied and refused, equity will afford relief. Such relief does not arise from any contract between the sureties, but from principles of equality, or from equitable considerations which govern the relation of sureties, and from the fact that their interest is common as well as their burdens.

It matters not whether the taking of the several indemni-

ties by the defendants was known to the other sureties at the time they signed the bond, which knowledge on their part, however, is not proved.

One surety may agree that the principal may give a separate indemnity to a cosurety for his individual benefit, to induce such cosurety to become such in a bond or obligation; but without such consent by the surety he will be entitled equally to share the indemnity. If such consent be denied it must be proved. The taking of an indemnity secretly for the benefit of one or a part of the sureties is a violation of good faith.

All the sureties believe, and have a right to believe, that all who sign as sureties are equally answerable for the burdens and liabilities which suretyship imposes.

The very instrument signed warrants the belief of a common obligation; and any act done by a cosurety, intended to defeat the just expectations, of another, and to impose on that other surety greater liabilities than himself in the suretyship, is a fraud in equity, and, if permitted to be successful, the principle which lies at the very basis of suretyship would be destroyed.

These principles are so fair and just in themselves that I am unable to perceive how they can be doubted. I never heard it doubted before in any case, if one cosurety take security from his principal for his proportion of the burden, or for the whole, that the other cosureties should share the benefit of it.

" Sureties," says Story (1 Eq. Jur. § 499), " are not only entitled to contribution from each other for moneys paid in discharge of their joint liability for the principal, but they are also entitled to the benefit of all securities which have been taken by any one of them to indemnify himself against such liabilities."

It was contended in the argument in this cause that the indemnity which Connaway took was executed and delivered to him before he became security. The proof as to the exact moment when he took it does not appear. This fact is man-

ifest,—that he took it with the intention of becoming one of the sureties, if the indemnity should be given.

If not taken after the bond was signed by him, it was taken on the same day and immediately before signing the bond; and when he signed with his cosureties he did not disclose the fact that he then possessed his personal indemnity.

Under such circumstances all the other cosureties, relying upon the good faith, not only of Robert H. Kollock, but of all his sureties in the bond, trusted—as said by Henderson, J., in *Moore* v. *Moore*, 4 Hawks, 358—apparently to the same laws of indemnity and to the united exertions of each other to avoid harm severally.

What would have been the consequence of permitting the defendants to take an indemnity, the benefits of which should inure only to themselves, and from the benefit in which their cosureties should be excluded? If such should be the operation and effect of the indemnities taken by them, then the taking of them lessened the ability of Robert H. Kollock to indemnify the other sureties.

The same principles I have announced would equally apply if it was distinctly proved that Connaway's indemnity was taken before he signed the bond. The time of signing the bond is immaterial. The equality of the sureties will not thereby be affected; they all have equal equities which are enforceable in this court.

It appearing to me, from the proofs in the cause, that the plaintiffs have paid in different degrees in excess of their just proportions of the said sum of $2,500, the amount as aforesaid for which Robert H. Kollock made default of payment, I shall decree that the defendants reimburse the said sureties severally, in proportion, out of the money which they received under their several indemnities.

Let a decree be drawn accordingly.